**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TERESA MORALES, CAROLINA SANTOS, ARACELI MONDRAGON, | Civil Action No. 2:22-cv-05711 |
| Plaintiffs, | |
| v. | |
| BAGEL & DELI CREATION, LLC, DN BAGELS LLC, d/b/a BAGEL EXPRESS, NEIL PATEL, and RICKY PATEL, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT</u>

TRIEF & OLK
Eyal Dror
800 Third Avenue, 29th Floor
New York, New York 10022
Tel: (212) 486-6060
edror@triefandolk.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT BACKGROUND ........................................................................................... 1

    A.   Procedural Background ............................................................................... 1

    B.   Factual Background ..................................................................................... 5

        1)   Teresa Morales ................................................................................. 5

        2)   Carolina Santos ................................................................................ 6

        3)   Araceli Mondragon ......................................................................... 7

ARGUMENT ..................................................................................................................... 8

    Standard of Review ........................................................................................... 8

    Point I   Defendants' Conduct Warrants Default Judgment ................................. 9

    Point II   Plaintiffs Establish Defendants' Liability with respect to All Claims ................. 11

    A.   FLSA Liability ............................................................................................ 11

        1)   Defendants Are Employers Subject to the FLSA ................................ 11

        2)   Plaintiffs Are Employees Covered by the FLSA ............................... 12

        3)   Plaintiffs' Claims Are Not Subject to FLSA Exemptions ...................... 12

    B.   NYLL Liability ............................................................................................ 13

    C.   NYSHRL Liability ...................................................................................... 13

    Point III   All Plaintiffs Substantiate Their Damages to a Reasonable Degree of Certainty ............................................................................................................... 15

    A.   Morales's Claims and Damages .................................................................. 15

        1)   Minimum Wage Claim ..................................................................... 15

        2)   Overtime Claim ................................................................................ 17

        3)   Liquidated Damages ......................................................................... 18

        4)   WTPA Claims .................................................................................. 19

        5)   Pre-Judgment Interest ...................................................................... 19

    B.   Santos's Claims and Damages .................................................................... 20

        1)   Minimum Wage Claim ..................................................................... 21

        2)   Overtime Claim ................................................................................ 21

      3)   Spread-of-Hours Claim ................................................................. 22

      4)   Liquidated Damages ..................................................................... 22

      5)   WTPA Claims ............................................................................... 23

      6)   NYSHRL Claims .......................................................................... 23

      7)   Pre-Judgment Interest .................................................................. 24

  C.    Mondragon's Claims and Damages .................................................24

      1)   Minimum Wage Claim ................................................................. 24

      2)   Overtime Claim ............................................................................ 25

      3)   Tip Withholding Claim ................................................................. 25

      4)   Liquidated Damages ..................................................................... 26

      5)   WTPA Violations ......................................................................... 26

      6)   NYSHRL Claims .......................................................................... 26

      7)   Pre-Judgment Interest .................................................................. 26

Point IV  Plaintiffs' Demand for Attorneys' Fees and Expenses Is Reasonable................. 26

  A.    Plaintiffs' Attorneys' Fees Are Reasonable....................................................27

  B.    Plaintiffs' Costs Are Reasonable .................................................................29

CONCLUSION.......................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Action S.A. v. Marc Rich & Co., Inc.*,
   951 F.2d 504 (2d Cir. 1991) ........................................................... 9

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002) ........................................................... 14

*Antoine v. Brooklyn Maids 26, Inc.*,
   489 F. Supp.3d 68 (E.D.N.Y. 2020) ........................................... 10, 14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany*,
   522 F.3d 182 (2d Cir. 2008) ........................................................... 27

*Au Bon Pain Corp. v. Artect, Inc.*,
   653 F.2d 61 (2d Cir. 1981) ............................................................. 9

*Begum v. Ariba Disc., Inc.*,
   2015 WL 223780 (S.D.N.Y. Jan. 16, 2015) .................................. 19

*Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*,
   2008 WL 5560868 (S.D.N.Y. Oct. 27, 2008) ............................... 11

*Caltenco v. G.H. Food Inc.*,
   2021 WL 4481205 (E.D.N.Y. Sep. 30, 2021) ........................... 27, 29

*Chao v. Vidtape, Inc.*,
   196 F. Supp.2d 281 (E.D.N.Y. 2002) ........................................... 15

*Charvac v. M & T Project Managers of N.Y., Inc.*,
   2015 WL 5475531 (E.D.N.Y. Jun. 17, 2015) ............................... 16

*Cohetero v. Stone & Tile, Inc.*,
   2018 WL 565717 (E.D.N.Y. Jan. 25, 2018) .................................. 27

*Dejesus v. HF Mgmt. Servs., LLC*,
   726 F.3d 85 (2d Cir. 2013) ............................................................. 12

*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993) ......................................................... 8, 9, 10

*Ethelberth v. Choice Sec. Co.*,
   91 F. Supp.3d 339 (E.D.N.Y. 2015) .............................................. 13

*Fermin v. Las Delicias Peruanas Rest., Inc.*,
   93 F. Supp.3d 19 (E.D.N.Y. 2015) ................................................ 20

*Finkel v. Romanowicz*,
   577 F.3d 79 (2d Cir. 2009) ............................................................. 8

*Fustok v. ContiCommodity Servs., Inc.*,
   873 F.2d 38 (2d Cir. 1989)................................................................. 9

*Garcia v. Badyna*, No.,
   2014 WL 4728287 (E.D.N.Y. Sep. 23, 2014)................................. 12

*Garcia v. Giorgio's Brick Oven & Wine Bar*,
   2012 WL 3339220 (S.D.N.Y. Aug. 15, 2012)
   *report and recommendation adopted*,
   2012 WL 3893537 (S.D.N.Y. Sep. 7, 2012).................................... 18

*Glatt v. Fox Searchlight Pictures Inc.*,
   293 F.R.D. 516 (S.D.N.Y. 2013),
   *rev'd on other grounds*,
   811 F.3d 528 (2d Cir. 2016)............................................................. 13

*Gordon v. Chambers*,
   2024 WL 3533876 (E.D.N.Y. Jul. 25, 2024)................................. 10

*Gortat v. Capala Bros.*,
   949 F. Supp.2d 374 (E.D.N.Y. 2013) ............................................. 20

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
   973 F.2d 155 (2d Cir. 1992)............................................................... 9

*Gunawan v. Sake Sushi Rest.*,
   897 F. Supp.2d 76 (E.D.N.Y. 2012) ................................................. 9

*Guthrie v. Rainbow Fencing Inc.*,
   113 F.4th 300 (2d Cir. 2024)........................................................... 19

*Jacobs v. N.Y. Foundling Hosp.*,
   483 F. Supp.2d 251 (E.D.N.Y. 2007) ............................................. 12

*Johnson v. Parts Auth., LLC*,
   2021 WL 4221775 (E.D.N.Y. Sep. 16, 2021)................................. 29

*Joseph v. HDMJ Restaurant, Inc.*,
   970 F. Supp.2d 131 (E.D.N.Y. 2013) ....................................... 10, 11

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................. 27

*Lauria v. Heffernan*,
   607 F. Supp.2d 403 (E.D.N.Y. 2009) ............................................. 13

*Lu Nan Fan v. Jenny & Richard's Inc.*,
   2019 WL 1549033 (E.D.N.Y. Feb. 22, 2019),
   *report and recommendation adopted*,
   2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019) ................................... 20

*Mason Tenders Dist. Council v. Duce Constr. Corp.*,
   2003 WL 1960584 (S.D.N.Y. Apr. 25, 2003).................................. 10

*Mejia v. E. Manor USA Inc.*,
    2013 WL 3023505 (E.D.N.Y. Apr. 19, 2013),
    *report and recommendation adopted*,
    2013 WL 2152176 (E.D.N.Y. May 17, 2013) ....................................................... 20

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013)................................................................................ 17

*Padilla v. Manlapaz*,
    643 F. Supp.2d 298 (E.D.N.Y. 2009) ................................................................. 11

*Payamps v. M & M Convenience Deli & Grocery Corp.*,
    2018 WL 3742696 (E.D.N.Y. May 18, 2018) ................................................... 11

*Perez Campos v. Quentin Mkt. Corp.*,
    2018 WL 9945754 (E.D.N.Y. Oct. 17, 2018).......................................... 16, 17, 20

*Petrisch v. HSBC Bank USA, Inc.*,
    2013 WL 1316712 (E.D.N.Y. Mar. 28, 2014) .................................................. 14

*Rainone v. Potter*,
    388 F. Supp.2d 120 (E.D.N.Y. 2005) ................................................................. 23

*Rana v. Islam*,
    887 F.3d 118 (2d Cir. 2018)................................................................................ 19

*Ravina v. Columbia Univ.*,
    2019 WL 1450449 (S.D.N.Y. Mar. 31, 2019) .................................................. 23

*Redd v. New York Div. of Parole*,
    678 F.3d 166 (2d Cir. 2012)................................................................................ 14

*Romero v. Anjdev Enterprises, Inc.*,
    2017 WL 548216 (S.D.N.Y. 2017)..................................................................... 25

*Santiago v. Crown Heights Ctr. for Nursing & Rehab.*,
    2017 WL 9482107 (E.D.N.Y. Feb. 24, 2017),
    *report and recommendation adopted as modified*,
    2017 WL 4410807 (E.D.N.Y. Sep. 30, 2017)................................................... 24

*Schiano v. Quality Payroll Sys., Inc.*,
    445 F.3d 597 (2d Cir. 2006)............................................................................... 13

*Setty v. Fitness*,
    2018 WL 8415414 (E.D.N.Y. Dec. 18, 2018),
    *report and recommendation adopted*,
    2019 WL 1292431 (E.D.N.Y. Mar. 21, 2019) ........................................... 14, 23

*Sooroojballie v. Port Authority of New York & New Jersey*,
    816 F. App'x 536 (2d Cir. 2020)....................................................................... 23

*Suggs v. Crosslands Transp., Inc.*,
    2015 WL 1443221 (E.D.N.Y. Mar. 27, 2015) ................................................. 12

*Tamarin v. Adam Caterers, Inc.*,
    13 F.3d 51 (2d Cir. 1993).................................................................................... 9, 22

*Terry v. Ashcroft*,
    336 F.3d 128 (2d Cir. 2003).............................................................................. 14

*Ting Yao Lin v. Hayashi Ya II, Inc.*,
    2009 WL 289653 (S.D.N.Y. Jan. 30, 2009),
    *report and recommendation adopted*,
    2009 WL 513371 (S.D.N.Y. Feb. 27, 2009)....................................................... 15

*Tomka v. Seiler Corp.*,
    66 F.3d 1295 (2d Cir. 1995),
    *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998)........................................................................................... 14

*Toure v. Thunder Lube Inc.*,
    2019 WL 4805197 (E.D.N.Y. Sep. 30, 2019)..................................................... 29

*Velu v. Velocity Exp., Inc.*,
    666 F. Supp.2d 300 (E.D.N.Y. 2009) ................................................................ 12

*Villalta v. JS Barkats, P.L.L.C.*,
    2021 WL 2458699 (S.D.N.Y. Apr. 16, 2021)..................................................... 24

*Zhao v. East Harlem Laundromat, Inc.*,
    2010 WL 4628294 (S.D.N.Y. Oct. 8, 2010) ...................................................... 15


**Statutes**

29 U.S.C. § 203...................................................................................................... 11, 12

29 U.S.C. § 206............................................................................................................ 11

29 U.S.C. § 207...................................................................................................... 11, 17

29 U.S.C. § 213............................................................................................................ 12

42 U.S.C. § 2000e-2 .................................................................................................... 13

N.Y. Exec. Law § 297.................................................................................................. 27

N.Y. Exec. Law. § 296................................................................................................. 13

N.Y. Lab. Law § 195 ................................................................................................... 19

N.Y. Lab. Law § 196-d ................................................................................................ 25

N.Y. Lab. Law § 650 *et seq.* ....................................................................................... 13

**Rules**

C.P.L.R. § 5001 ..................................................................................................... 20

C.P.L.R. § 5004 ..................................................................................................... 20

Fed. R. Civ. P. 55 ................................................................................................. 8, 9

Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 55.2 ................................................................................. 1, 9

**Regulations**

29 C.F.R. § 778.5 .................................................................................................. 17

N.Y. Comp. Codes R. & Regs., tit. 12, § 146-1.2 ................................................. 16

N.Y. Comp. Codes R. & Regs., tit. 12, § 146-1.4 ................................................. 17

N.Y. Comp. Codes R. & Regs., tit. 12, § 146-3.5 ................................................. 16

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Plaintiffs Teresa Morales ("Morales"), Carolina Santos ("Santos"), and Araceli Mondragon ("Mondragon") (collectively, "Plaintiffs") in support of their motion for a default judgment against Defendants Bagel & Deli Creation, LLC ("Bagel Creation"), DN Bagels LLC, d/b/a Bagel Express ("Bagel Express"), Neil Patel (a/k/a Neelkumar A. Patel, ("N. Patel")) and Ricky Patel (a/k/a Rohitkumar Patel ("R. Patel")) (collectively, "Defendants") pursuant to Fed. R. Civ. P. 55(b)(2).  For the reasons set forth below, the Court should enter the accompanying proposed default judgment against Defendants.

## RELEVANT BACKGROUND

### A.  Procedural Background

Ms. Morales commenced this action on September 23, 2022, by filing an original complaint, alleging wage-hour violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the Wage Theft Prevention Action ("WTPA") against all Defendants. (ECF No. 1.)  Ms. Santos and Ms. Mondragon thereafter joined the action on January 13, 2023, with the filing of an amended complaint, which also alleged wage-hour violations by Defendants. (ECF No. 14.)  Shortly thereafter, on February 13, 2023, Plaintiffs filed the Second Amended Complaint, which added claims under the New York State Human Rights Law ("NYSHRL") by Ms. Santos and Ms. Mondragon against N. Patel and Bagel Creation. (ECF No. 16.)  Defendants filed their Answer to the Second Amended Complaint on March 14, 2023.  (ECF. N. 17.)

On May 11, 2023, Magistrate Judge Dunst entered an order directing the parties to mediation. (*See* ECF Docket entry dated 5/11/2023).  As described below, what followed were a series of broken promises and unexplained delays by Defendants culminating with the withdrawal of their counsel and their failure to subsequently appear in or defend against Plaintiffs' action.

The parties held a mediation on August 31, 2023 (the "August 2023 Mediation"). At that

time, Defendants' counsel represented to Plaintiffs, for the first time, that Defendants were in financial straits.  Because Defendants' inability to pay had never been cited in the parties' prior dealings and no discovery concerning it had ever been provided, Plaintiffs demanded, and Defendants agreed, to make full and prompt disclosures of their finances for Plaintiffs' review, so that the mediation could re-commence and proceed within 30 days (*i.e.* by September 30, 2023). Based on this agreement, which was set forth by the parties in a joint filing to Magistrate Judge Dunst, the Court agreed to extend the parties' time to complete the mediation. (*See* ECF. No. 22; ECF Docket Entry dated 9/19/2023.)

Defendants subsequently failed to make *any* disclosures within the agreed upon period. Instead, on November 6, 2023, over two months after the August 2023 Mediation, Defendants made partial financial disclosures and represented that more disclosures would follow.  The parties described these facts in a joint submission to the Court and requested another two-week extension to assess whether a settlement could be achieved based on Defendants' further disclosures.  (ECF No. 25.) The parties indicated, and Magistrate Judge Dunst agreed, that, in the absence of a settlement, full fact discovery would commence on November 27, 2023 and conclude by February 16, 2024. (*See id.*; ECF Docket Entry dated 11/8/2023.)

Defendants failed to produce the promised financial disclosures.  Accordingly, on November 27, 2023, Plaintiffs commenced formal discovery, serving Defendants with a first set of document requests and interrogatories.  Defendants failed to respond, and so, on January 5, 2024, Plaintiffs' counsel communicated with Defendants' counsel to address their default.  At that point, Defendants again invoked their financial condition and, subsequently, began supplementing the incomplete financial disclosures they had begun making in November 2023.  Based on these disclosures, Defendants, through their counsel, requested that the parties recommence their

settlement discussions.  Plaintiffs agreed, and in a submission to the Court, the parties jointly described the above circumstances and requested an additional extension to the discovery deadline. (ECF No. 26.)  Magistrate Judge Dunst granted that request.  (ECF No. 27.)

In the wake of that extension, the parties made some progress toward settlement, but Plaintiffs also identified outstanding gaps in Defendants' financial disclosures and requested that Defendants fill those.  Accordingly, on March 25, 2024, in order to address those gaps and advance the settlement discussions, the parties jointly requested a further 30-day extension of the discovery deadline.  In their joint request, the parties agreed that if a settlement could not be promptly achieved, Defendants would cure their prior discovery default by April 12, 2024.  (ECF No. 28.)

Notwithstanding the above, as set forth in Plaintiffs' subsequently filed status report, Defendants neither made additional financial disclosures nor cured their prior discovery default. (ECF No. 31.)  Instead, on April 5, 2024, in a motion served on his clients, Defendants' counsel petitioned to withdraw from the action based on what he described as an irretrievably broken attorney-client relationship, which included the cessation of all communications with and cooperation by Defendants.  (ECF No. 29.)

On April 8, 2024, Magistrate Judge Dunst entered a scheduling order setting a May 3, 2024 conference on the motion to withdraw and directed Defendants and their counsel to appear at the conference. (ECF Scheduling Order dated Apr. 8, 2024 (the "April Scheduling Order").) Defendants' counsel served the April Scheduling Order on Defendants. (ECF No. 30.) Nevertheless, Defendants failed to appear at the May 3, 2024 conference, following which Magistrate Judge Dunst entered an order granting their counsel's motion to withdraw and setting a June 7, 2024 status conference.  (ECF No. 32 (the "May Order").)

The May Order directed Defendants to attend the June 7, 2024 status conference and

3

advised them that the failure to do so could result in a recommendation to the Court to strike Defendants' answer and enter a default against them.  (*Id.*)  Plaintiffs served the May Order upon Defendants. (ECF No. 35.)[1]  Nevertheless, Defendants failed to attend the June 7 status conference (ECF No. 36).  Magistrate Judge Dunst thereafter entered orders scheduling two additional conferences, on June 20, 2024 and July 3, 2024.  (ECF Nos. 36, 38  (the "Additional Orders".)

Like the May Order, the Additional Orders also advised Defendants that their failure to attend the scheduled conferences could result in a recommendation to strike their answer and enter a default against them.  (*Id.*)  As with the May Order, Plaintiffs served the Additional Orders upon Defendants.  (*See* ECF Nos. 37, 39.)   Nevertheless, Defendants again failed to attend the subsequently scheduled conferences. (*See* ECF Nos. 38 & 40.)  Accordingly, by order dated July 3, 2024, Magistrate Judge Dunst authorized the filing of a pre-motion letter with the Court to seek the relief requested in the instant motion.  (ECF No. 40.)

Plaintiffs served Magistrate Judge Dunst's July 3, 2024 Order on Defendants (ECF No. 41), and thereafter filed a pre-motion letter with this Court requesting authorization to file the instant Motion (ECF No. 42).[2]  By order dated August 2, 2024, the Court directed Plaintiffs to proceed with the instant motion.  (*See* ECF Docket Entry dated 8/2/2024.)

Plaintiffs subsequently obtained an extension of the motion deadline pending entry of a

---

[1]   As set forth in the accompanying Declaration of Eyal Dror ("Dror Decl."), Plaintiffs served the filings on Defendants utilizing two email addresses (bagelanddelicreations@gmail.com and Neevrohit2019@gmail.com) and two physical addresses (669 Route 109, West Babylon, NY 11704 and 217 N. Main Street, Sayville, NY 11782) provided by Defendants' counsel.  No bounce-back was ever received to Plaintiffs' service by email.  However, earlier this month, the documents delivered to one of the physical addresses (217 N. Main Street) for service were returned non-deliverable.  (Dror Decl. ¶¶ 35-38.)  For purposes of serving the instant motion papers, Plaintiffs utilize the same email and physical addresses as before, as well as additional physical addresses for N. Patel and R. Patel adduced through discovery.  (*Id.* at ¶ 39.)

[2]   Consistent with their prior practice, Plaintiffs also served their pre-motion letter to the Court on Defendants.  (ECF No. 43.)

certificate of default against Defendants by the Clerk of the Court.  (*See* ECF No. 44; ECF Docket Entry dated 9/25/2024).   The Clerk entered a certificate of default against Defendants on September 26, 2024.  (ECF No. 47.)  Plaintiffs subsequently served both the Court's September 25, 2024 Order and the Clerk's certificate of default on Defendants.  (ECF No. 52.)

    **B.  <u>Factual Background</u>**

The factual background below summarizes, and is supported by, the accompanying declarations of Mses. Morales ("Morales Decl."), Santos ("Santos Decl."), and Mondragon ("Mondragon"), as well as the Dror Declaration.  Plaintiffs respectfully refer the Court to those declarations for a full recitation of the relevant facts.

    *1)  Teresa Morales*

Morales was employed by Bagel Express and by N. Patel and R. Patel (the "Patels") from the middle of September 2016 through April 2020 (the "Bagel Express Period"), and thereafter by the Patels and Bagel Creation from May 2020 until July 2021 (the "Bagel Creation Period").  Both the Bagel Express and Bagel Creation stores were located in Suffolk County.  Morales's role in each consisted primarily of preparing food and cleaning the stores.  (Morales Decl., ¶¶ 5-9.)

Throughout the Bagel Express Period, Ms. Morales worked six days a week for a total of, on average, 45 hours each week.  From the commencement of the Bagel Express Period through 2019, she earned $370 per week.  Thereafter, commencing in 2020 through the end of the Bagel Express Period, she earned $12 per hour.   Throughout the Bagel Express Period, she received her wages, often late, partly in cash and party by check.  (*Id.* at ¶¶ 10-12, 16.)

Throughout the Bagel Creation Period, Ms. Morales worked seven days a week for a total of approximately 60 hours per week.  During that time, Ms. Morales earned $14 per hour, which was paid in cash, and often late.  (*Id.* at ¶¶ 13-16.)

For significant periods of her employment by Defendants, Ms. Morales earned less than

the prevailing minimum wage mandated under the NYLL.  Additionally, at no point throughout her employment by Defendants was Ms. Morales paid an overtime premium for working more than 40 hours per week as required under the NYLL and the FLSA.  (*Id.* at ¶¶ 11, 14.)

Additionally, in violation of the WTPA, Ms. Morales was never furnished with the requisite wage notices or requisite wage statements that employers are mandated to provide under New York law.  Ms. Morales was directly impacted, and damaged, by these wholesale failures.  In particular, Defendants' failure to provide her with any wage notices denied Ms. Morales knowledge of her fixed pay date and therefore a concrete basis on which to complain when Defendants failed to pay her compensation in a timely fashion.  Additionally, Defendants' failure to provide Ms. Morales with wage statements – in conjunction with their denial of the hours and pay alleged by her – compelled her to seek counsel to commence this action and to expend time and resources demonstrating Defendants' wage-hour violations. (*Id.* at ¶¶ 16-20.)

### 2)  *Carolina Santos*

Ms. Santos was employed by the Patels and Bagel Creation from on or around April 2021 through December 2022.  Her role consisted of preparing food, cleaning the store, stocking the salad bar and beverage stand, and attending to customers at the counter.  (Santos Decl., ¶¶ 5-6.)

Throughout her employment, Ms. Santos worked seven days a week, but her total hours of work per week increased over time as follows: (a) for approximately the first month of her employment, she averaged a total of 56 hours per week; (b) from approximately May 2021 through September 2022, she worked 10 to 12 hours per day, for an average total of 77 hours per week; and (c) from approximately March 2022 through the end of her employment, she worked 11 to 13 hours a day, for an average total of 83 hours per week.  (*Id.* at ¶ 9.)

From the start of her employment through December 2021, Ms. Santos was paid $12 per hour, and, thereafter and through the end of her employment, she earned $13 per hour.  She

generally received her wages entirely in cash and almost always late.  (*Id.* at ¶¶ 10-12.)

Throughout her employment, Ms. Santos earned less than the prevailing minimum wage mandated under the NYLL.  Likewise, Ms. Santos was never paid an overtime premium for working more than 40 hours per week as required under the NYLL and the FLSA or a spread-of-hour premium for working more than 10 hours per day as required under the NYLL. (*Id.* at ¶ 10; SAC, ¶¶ 55-56.)

Additionally, in violation of the WTPA, Ms. Santos was never furnished with the requisite wage notices or requisite wage statements mandated under New York law and suffered the same injuries as asserted by Ms. Morales. (Santos Decl. at ¶¶ 12-16.)

Finally, beyond the above-described wage-hour violations, during her employment Ms. Santos was also the target of inappropriate physical contact and unwanted sexual overtures by Defendant N. Patel.  Notwithstanding Ms. Santos's complaints regarding N. Patel's sexual harassment and the hostile work environment it was creating, his conduct persisted.  This conduct, along with Bagel Creation's failure to correct it, caused material emotional distress to Ms. Santos and constituted a violation of the NYSHRL. (*Id.* at ¶¶ 17-20.)

### 3)  *Araceli Mondragon*

Ms. Mondragon was employed by the Patels and Bagel Creation from on or around February 2022 through October 2022.  She worked as a cashier at the restaurant and also took customer orders by phone.  (Mondragon Decl., ¶¶ 5-6.)

Throughout her employment, Mondragon worked six days a week, averaging a total of approximately 45 hours per week; she was paid $12 per hour, which she received entirely in cash, and almost always on a delayed basis; and she was never paid an overtime premium despite working more than 40 hours in every week she was employed. (*Id.* at ¶¶ 9-12, 16.)  Moreover, throughout her employment, Defendants, through their agents, unlawfully retained pooled

gratuities paid by customers to employees, including Mondragon, who worked at the store counter. On average, Ms. Mondragon received less than $2 per day in gratuities, even though her share of the pooled gratuities should have exceeded $10 each day.  (*Id.* at ¶¶ 13-15.)

Additionally, in violation of the WTPA, Ms. Mondragon was never furnished with the requisite wage notices or requisite wage statements mandated under New York law and suffered the same injuries as asserted by Ms. Morales.  (*Id.* at ¶¶ 16-20.)

Finally, beyond the above-described wage-hour violations, Ms. Mondragon, like Ms. Santos, was the target of repeated inappropriate physical contact and unwanted sexual overtures by Defendant N. Patel, including repeated requests both in person and by phone that she agree to date him.  Notwithstanding Ms. Mondragon's complaints regarding N. Patel's harassment and the hostile work environment it was creating, his conduct persisted throughout her employment.  This conduct, along with Bagel Creation's failure to correct it, caused material emotional distress to Ms. Mondragon and constituted a violation of the NYSHRL.  (*Id.* at ¶¶ 21-24.)

## ARGUMENT

Given that Plaintiffs' claims are substantiated by well-pleaded allegations and sworn statements, and Defendants have abandoned any effort to appear or defend against the claims despite multiple opportunities to do so, the instant motion should be granted in full.

### STANDARD OF REVIEW

The decision to grant a motion for default judgment under Fed. R. Civ. P. 55(b) is "left to the sound discretion of [the] district court." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  In reviewing such a motion, the district court must determine whether a plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It

is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp.2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Under Federal Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the amount of damages can be determined based on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). As discussed below, pursuant to the above standards, Plaintiffs clearly establish that default is warranted, that their claims are meritorious as a matter of law, and that they are entitled to the damages they seek.[3]

## POINT I
### DEFENDANTS' CONDUCT WARRANTS DEFAULT JUDGMENT

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default

---

[3] Additionally, Plaintiffs' counsel has confirmed that the Patels are not in military service (Dror Decl., ¶ 34, Ex. D) and neither are minor or incompetent (*id. at* ¶ 32). Accordingly, the instant motion also complies with the requirements of Rule 55.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective July 1, 2024.

judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the nondefaulting party would suffer as a result of the denial of the motion for default judgment." *Joseph v. HDMJ Restaurant, Inc.*, 970 F. Supp.2d 131, 141 (E.D.N.Y. 2013) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96.

The procedural history of this case demonstrates that (i) Defendants failed to secure alternate counsel after their original counsel withdrew, (ii) defaulted with respect to Plaintiffs' discovery requests, and (iii) disregarded multiple Court orders directing that they appear and defend the action.  Given this, Defendants' conduct is plainly willful, *see Joseph*, 970 F. Supp.2d, at 141 ("Continued noncompliance with a court order suggests willfulness . . . include[ing] where . . . a corporation fails to comply with a court order to obtain counsel" (internal quotations omitted)); fails to set forth any substantive defense to Plaintiffs' claims, *see Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp.3d 68, 82 (E.D.N.Y. 2020) ("[W]hen a defendant has not presented a defense to the court, the well-pleaded allegations in plaintiff's complaint are presumed to be true"); and has prejudiced Plaintiffs, who have been compelled to suffer numerous and ongoing delays and have no other means to obtain justice, *see Gordon v. Chambers*, 2024 WL 3533876, at *9 (E.D.N.Y. Jul. 25, 2024) (finding prejudice where plaintiff had "no other means to recover on his claims" but for default) (internal quotations omitted).  Moreover, given the substantial steps Plaintiffs have already undertaken to provide Defendants with an opportunity to defend this case, there is no indication that requiring Plaintiffs to take further steps to elicit a response from

Defendants would be effective. *See Joseph*, 970 F. Supp.2d, at 148 (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)) (finding clear prejudice where "'there [we]re no additional steps available [to a plaintiff] to secure relief.'"). Given all the above, entry of default judgment against Defendants is clearly warranted here.

## POINT II
### PLAINTIFFS ESTABLISH DEFENDANTS' LIABILITY WITH RESPECT TO ALL CLAIMS

Entry of a default judgment against Defendants is supported by Plaintiffs' pleadings and declarations, which clearly establish Defendants' liability with respect to the claims alleged.

### A. FLSA Liability

Beyond demonstrating the specific violations of law described in Point III below, to establish liability under the FLSA, a "plaintiff must prove the: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.,* 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018).

### 1)  Defendants Are Employers Subject to the FLSA

An employer is subject to both the minimum wage and overtime provisions of the FLSA if (1) their employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce." [4] 29 U.S.C. §§ 206, 207; *see also Padilla v. Manlapaz*, 643 F. Supp.2d 298, 299 (E.D.N.Y. 2009).  "Commerce" is, in turn, defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).  These two methods of establishing FLSA coverage are

---

[4] An enterprise is engaged in commerce if it "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000 . . . ."  29 U.S.C. §§ 203(s)(1)(A)(i)–(ii).

known as "individual coverage" and "enterprise coverage," respectively. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp.2d 251, 257 (E.D.N.Y. 2007). Here, Plaintiffs have established both "individual coverage" and "enterprise coverage" under the FLSA. (SAC, ¶¶ 13, 17.) Plaintiffs allege that they were engaged in commerce and that "Defendants had annual gross volume of sales made or business done of over $500,000 for each year in the relevant period." (*Id.* ¶ 14.) Accordingly, Plaintiffs establish that Defendants are employers subject to the FLSA.

### 2) *Plaintiffs Are Employees Covered by the FLSA*

Under the FLSA, an "employee" generally means "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see generally id.* § 203(e). "In light of [this] broad definition . . . , the Second Circuit has found allegations which simply 'state where the plaintiffs worked, outline their positions, and provide their dates of employment,' sufficient to support a finding of employee status . . . ." *Suggs v. Crosslands Transp., Inc.*, 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 27, 2015) (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013)). Here, Plaintiffs assert that they were employed by Defendants, including that Defendants N. Patel and R. Patel supervised paid them and had the authority to hire and terminate them. (*See*, Morales Decl., ¶¶ 5-6, 8-9; Santos Decl., ¶¶ 5, 7-8, Mondragon Decl., ¶¶ 5, 7-8.) "It follows, therefore, that for purposes of this default, [Plaintiffs each] qualif[y] as an 'employee' under the FLSA." *Garcia v. Badyna*, No., 2014 WL 4728287, at *5 (E.D.N.Y. Sep. 23, 2014); *see also Velu v. Velocity Exp., Inc.*, 666 F. Supp.2d 300, 307 (E.D.N.Y. 2009) (stating that the "ultimate question is . . . whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]") (quotations omitted).

### 3) *Plaintiffs' Claims Are Not Subject to FLSA Exemptions*

Finally, there are no bases for exempting the employment relationship at issue here from the FLSA's provisions. *See* 29 U.S.C. § 213(a) (setting forth the relevant exemptions). Plaintiffs

assert that Defendants employed them in food preparation, cleaning, food stocking, and or attending to customers. (*See*, Morales Decl., ¶ 7; Santos Decl., ¶ 6, Mondragon Decl., ¶¶ 6.)  Such employment is not contemplated by any of the statutory exemptions.  Accordingly, for the purposes of this default motion, Plaintiffs have adequately alleged facts establishing the applicability of the FLSA, as a predicate to their claims under that statute.

### B. **NYLL Liability**

To recover under the NYLL, a plaintiff must first "prove that he was an employee" and that Defendant was an "employer[] as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp.3d 339, 360 (E.D.N.Y. 2015) (quotations omitted) (citing NYLL § 650 *et seq.*; *see also Lauria v. Heffernan*, 607 F. Supp.2d 403, 407-08 (E.D.N.Y. 2009). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013), *rev'd on other grounds*, 811 F.3d 528 (2d Cir. 2016); *see Ethelberth*, 91 F. Supp.3d at 360 (explaining that the NYLL's definition of an employer is broader than the FLSA's).  Accordingly, because, as noted above, Plaintiffs establish that FLSA standards apply here, they also establish that NYLL standards apply as well.

### C. **NYSHRL Liability**

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice [f]or an employer," on account of an individual's sex, "to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).[5]

---

[5] The NYSHRL is comparable to Title VII of the Civil Rights Act of 1964, which makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  Consistent with this, NYSHRL "[h]ostile work environment and retaliation claims . . . are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *see Setty v. Fitness*, 2018 WL 8415414, at *4 (E.D.N.Y. Dec. 18, 2018), *report and*

A plaintiff raising a hostile work environment claim under the NYSHRL must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Terry v. Ashcroft*, 336 F.3d 128, 147-48 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)). To do so, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted' to have altered the conditions of her working environment." *Antoine*, 489 F. Supp.3d, at 83-84 (internal quotations omitted).

Santos's and Mondragon's hostile work environment claims hinge on multiple instances of sexual harassment and assault, which, when considered individually or collectively, easily surpass the threshold of severity. Santos describes instances of groping by N. Patel during her employment as well as unwanted requests for sexual favors. (Santos Decl., ¶ 17.) In an especially egregious encounter, she describes being groped while in the presence of her daughter. (*Id.* at ¶ 18.) Similarly, in her declaration, Mondragon avers that she too was groped by N. Patel and was also subject to "repeated, unsolicited, and unwanted, sexual advances, both in person and by phone". (Mondragon Decl., ¶ 21.). The Second Circuit has recognized that "even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *accord Redd v. New York Div. of Parole*, 678 F.3d 166, 179 (2d Cir. 2012) ("Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment."). Moreover, Plaintiffs' repeated attempts to forestall N. Patel's advances warrant the reasonable inference that

---

*recommendation adopted*, 2019 WL 1292431 (E.D.N.Y. Mar. 21, 2019); *Petrisch v. HSBC Bank USA, Inc.*, 2013 WL 1316712, at *12 (E.D.N.Y. Mar. 28, 2014).

they found his conduct subjectively hostile and abusive.  Accordingly, the Court may properly

conclude that N. Patel and Bagel Creation are liable to Santos and Mondragon under the NYSHRL.

POINT III
ALL PLAINTIFFS SUBSTANTIATE THEIR DAMAGES TO A REASONABLE DEGREE OF CERTAINTY

As set forth below, damages under each of Plaintiffs' claims are substantiated to a

reasonable degree of certainty based on the undisputed record.

### A. Morales's Claims and Damages

As corroborated by her declaration and the pleadings, Morales is entitled to **$34,270.00** in

compensatory damages for her wage-hour claims (*i.e.*, unpaid minimum wages and overtime

premiums)[6], plus 9% pre-judgment interest on those combined  amounts as accrued from

**February 14, 2019** to the entry of judgment against Defendants.  Additionally, Morales is entitled

to **$34,270.00** in liquidated damages and **$10,000** in statutory damages for her WTPA claims.

#### 1)  Minimum Wage Claim

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly

wage for each hour that they work. 29 U.S.C. § 206(a); NYLL § 652.  While, at all relevant times,

the federal minimum wage has remained constant at $7.25 per hour, the New York minimum wage

was increased during the relevant period.   Through December 31, 2016, the applicable minimum

wage in Suffolk County – the location of Bagel Express and Bagel Creation – was $9.00 per hour,

but beginning at the start of 2017 and in each subsequent year thereafter that rate was increased in

one-dollar increments until it reached $15.00 per hour in 2022.   N.Y.C.R.R., tit. 12, § 146-

---

[6]   For all of Plaintiffs' wage-hour claims, which are not rebutted by any contrary evidence, "plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), *report and recommendation adopted*, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009); *see also Chao v. Vidtape, Inc.*, 196 F. Supp.2d 281, 293 (E.D.N.Y. 2002); *Zhao v. East Harlem Laundromat, Inc.*, 2010 WL 4628294, at *6 (S.D.N.Y. Oct. 8, 2010).

15

1.2(a)(1)(ii).  Accordingly, because, throughout the relevant period, the applicable state minimum wage was higher than the federal minimum wage, Plaintiffs' minimum wage damages are calculated based on New York's rate under the principle that "the law providing the greatest recovery will govern," *Charvac v. M & T Project Managers of N.Y., Inc.*, 2015 WL 5475531, at *4 (E.D.N.Y. Jun. 17, 2015).

"For purposes of determining whether Plaintiffs were paid the prevailing minimum wage, the Court must determine their regular hourly rate of pay." *Perez Campos v. Quentin Mkt. Corp.*, 2018 WL 9945754, at *4 (E.D.N.Y. Oct. 17, 2018).  As averred in Morales's declaration, and consistent with the pleadings in this action, during the Bagel Express Period, Morales worked six days a week for a total of 45 hours each week, during which she earned $370 through the end of 2019, and then $12 per hour through April 2020.  (Morales Decl., ¶¶ 10-11; *accord* SAC, ¶¶ 21-24.)[7]  The tables below set forth Morales's regular pay rate during the periods she earned a weekly versus an hourly wage.[8]  (The dates of Morales's employment at Bagel Express are highlighted in grey.)  As reflected below, Morales's minimum wage damages total **$11,720.00**, for which the Patels and Bagel Express (but not Bagel Creation) are liable.

**Morales Table 1A – Minimum Wage Damages for Weekly Wage Pay Period:**

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| Time Period | Total Weeks | Weekly Pay | Imputed Pay/Hr *(=C/40)* | NYLL MW | Rate Shortfall *(=E-D)* | Weekly Shortfall *(F*C)* | Total MW Shortfall *(B*G)* |
| Sep. '16 – Dec. '16 | 12 | $370.00 | $9.25 | $9.00 | $ - | $ - | **$ -** |

---

[7]    During her time at Bagel Creation in 2020 and 2021, Morales earned $14 per hour (Morales Decl., ¶ 14), which was more than the prevailing New York minimum wage at the time.

[8]    Under New York law, where hospitality industry employees are paid on a weekly basis, as Morales was at the start of her employment, the "regular rate" is calculated "by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y.C.R.R., tit. 12, § 146-3.5(b).  Because Morales at all times worked more than 40 hours, her imputed regular rate during the period she earned a weekly wage equals her weekly wage divided by 40.

| Jan. '17 – Dec. '17 | 52 | $370.00 | $9.25 | $10.00 | $0.75 | $ 30.00 | $ 1,560.00 |
| Jan. '18 – Dec. '18 | 52 | $370.00 | $9.25 | $11.00 | $1.75 | $ 70.00 | $ 3,640.00 |
| Jan. '19 – Dec. '19 | 52 | $370.00 | $9.25 | $12.00 | $2.75 | $110.00 | $ 5,720.00 |

$10,920.00

**Morales Table 1B – Minimum Wage Damages for Hourly Wage Pay Period:**

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| Time Period | Total Weeks | Pre-OT Hrs/Wk | Pay/Hr | NYLL MW | Rate Shortfall *(=E-D)* | Weekly Shortfall *(F\*C)* | Total MW Shortfall *(B\*G)* |
| Jan. '20 – Apr. '20 | 20 | 40 | $12.00 | $13.00 | $1.00 | $40.00 | $ 800.000 |
| May '20 – Dec. '20 | 30 | 40 | $14.00 | $13.00 | $ - | $ - | $ - |
| Jan. '21 – Jul. '21 | 28 | 40 | $14.00 | $14.00 | $ - | $ - | $ - |

$ 800.000

### 2) Overtime Claim

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *accord* N.Y.C.R.R., tit. 12, § 146-1.4 ("An employer shall pay an employee for overtime at a wage rate of 1½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek."). As noted above, the regular rate of pay "must be construed to mean the regular rate at which [the employee] is *lawfully* employed," which, if applicable, means a "higher minimum wage" set by state law, 29 C.F.R. § 778.5 (emphasis added); *see*, *e.g.*, *Perez Campos*, 2018 WL 9945754, at \*7–8. Likewise, by definition, where an employee's regular hourly rate exceeds state and federal minimum wage, the overtime rate is calculated based on that rate. As averred in Morales's declaration, and consistent with the pleadings in this action, Morales worked five hours of overtime each week at Bagel Express and

20 hours of overtime each week at Bagel Creation, but was never paid overtime (Morales Decl., ¶¶ 10-11, 13-14; *accord* SAC, ¶¶ 25, 28, 30.)[9]  Accordingly, as shown below, Morales is entitled to **$22,550.00** in overtime damages, with liability divided between Bagel Express and Bagel Creation at $14,430.00 and $8,120.00, respectively, and the Patels liable for the damages in full.

**Morales Table 2 - Overtime Damages:**

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| **Time Period** | **Total Weeks** | **OT Hrs/Wk** | **Actual Pay/Hr** | **NYLL MW** | **OT Rate** *(higher of D\*1.5 or E\*1.5)* | **OT Shortfall** *(=F-D)* | **Weekly Shortfall** *(=G\*C)* | **Total MW Shortfall** *(=C\*H)* |
| Sep. '16 – Dec. '16 | 12 | 5 | 0 | $9.00 | $13.50 | $13.50 | $ 67.50 | **$ 810.00** |
| Jan. '17 – Dec. '17 | 52 | 5 | 0 | $10.00 | $15.00 | $15.00 | $ 75.00 | **$ 3,900.00** |
| Jan. '18 – Dec. '18 | 52 | 5 | 0 | $11.00 | $16.50 | $16.50 | $ 82.50 | **$ 4,290.00** |
| Jan. '19 – Dec. '19 | 52 | 5 | 0 | $12.00 | $18.00 | $18.00 | $ 90.00 | **$ 4,680.00** |
| Jan. '20 – Apr. '20 | 20 | 5 | $12.00 | $13.00 | $19.50 | $ 7.50 | $ 37.50 | **$    750.00** |
| May '20 – Dec. '20 | 30 | 20 | $14.00 | $13.00 | $21.00 | $ 7.00 | $140.00 | **$ 4,200.00** |
| Jan. '21 – Jul. '21 | 28 | 20 | $14.00 | $14.00 | $21.00 | $ 7.00 | $140.00 | **$ 3,920.00** |

**$22,550.00**

### 3)  Liquidated Damages

Under the FLSA and the NYLL, an employee is entitled to recover liquidated damages equal to the amount of their unpaid wages.  *See* 29 U.S.C. § 216(b); *Garcia v. Giorgio's Brick Oven & Wine Bar*, 2012 WL 3339220, at \*4 (S.D.N.Y. Aug. 15, 2012) ("Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent

---

[9] As with her minimum wage damages, Morales's overtime damages are treated differently with respect to the periods she earned weekly wages versus hourly wages.  As noted above, during the period that Morales earned a weekly wage, that wage is construed, under New York law, solely as compensation for her regular 40-hour workweek. *See supra*, n. 8.  Accordingly, all hours beyond that are deemed uncompensated.

of the amounts underpaid."), *report and recommendation adopted*, 2012 WL 3893537 (S.D.N.Y. Sep. 7, 2012).  Because Plaintiffs cannot obtain a double recovery, courts award liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (*per curiam*).  Here, for the reasons set forth above NYLL damages provide a greater amount of recovery and total **$34,270.00** ($11,720+$22,550), with liability divided between Bagel Express and Bagel Creation at $26,150.00 and $8,120.00, respectively, and the Patels liable for the liquidated damages in full.

### 4) *WTPA Claims*

Pursuant to the WTPA, employers are obligated to provide employees with both (a) a notice, at the time of hiring, stating, among other things, their rate and time of pay, NYLL § 195(1)(a), and (b) a statement, each time wage are paid, detailing, among other things, the calculation of regular and overtime pay for each pay period.  *Id.* at § 195(3).  Where, as here, the failure to provide such notices and statements meets or exceeds 100 days, the statutory damages for the failures is $10,000. *Id.* § 198(1-b), (1-d).[10]  Accordingly, Morales is entitled, pursuant to her WTPA claims, to $10,000 in damages.

### 5) *Pre-Judgment Interest*

The NYLL permits the award of both liquidated damages and prejudgment interest. *See Begum v. Ariba Disc., Inc.*, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015).  Prejudgment interest

---

[10]   Moreover, given the clear and direct injury arising from Defendants' WTPA violations, which (i) deprived Morales of the ability to effectively contest Defendants' belated pay practices in real time; (ii) denied her the capacity to timely escalate Defendants' violations to regulators and attorneys based on Defendants' own documentation; and (iii) compelled her to expend time and effort demonstrating the wages she is due (Morales Decl., ¶¶ 18-20), there is no question here regarding Morales's standing.  The Second Circuit recently confirmed that the injuries asserted by Morales are sufficiently concrete to allow WTPA claims to proceed in federal court.  *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 309 (2d Cir. 2024) (noting that injury-in-fact could be established "when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion").

is calculated on the unpaid wages due under the NYLL, but not on the liquidated damages awarded under the state law and not on statutory damages under the WTPA *Mejia v. E. Manor USA Inc.*, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted*, 2013 WL 2152176 (E.D.N.Y. May 17, 2013); *Lu Nan Fan v. Jenny & Richard's Inc.*, 2019 WL 1549033, at *12 (E.D.N.Y. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).

The statutory rate of interest in New York is nine percent per annum.  C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. *Id.* § 5001(b).  For wage-hour cases the midpoint of a plaintiff's employment is generally used for purposes of calculating prejudgment interest. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp.3d 19, 49 (E.D.N.Y. 2015) (collecting cases); *Perez Campos*, 2018 WL 9945754, at *8 ("Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered.").  Under this approach, interest is to be accrued at the simple rate, "from [the midpoint date] . . . through the date judgment is entered." *See Gortat v. Capala Bros.*, 949 F. Supp.2d 374, 386 (E.D.N.Y. 2013).  Here, the approximate midpoint of Morales's roughly six-year period of employment by Defendants is **February 14, 2019**.

## B.  Santos's Claims and Damages

As set forth below, and corroborated by her declaration and the pleadings, Santos is entitled to **$34,132** in compensatory damages for her wage-hour claims (*i.e.*, unpaid minimum wages, overtime premiums, and spread-of-hours premiums), **$15,000** in emotional distress damages arising from her NYSHRL claim, and 9% pre-judgment interest on those combined amounts as accrued from **February 14, 2022** to the entry of judgment against Defendants.  Santos is also entitled to **$34,132** in liquidated wage-hour damages and **$10,000** in statutory WTPA damages.

### 1) Minimum Wage Claim

Santos worked at Bagel Creation throughout the relevant period, earning $12 per hour through the end of 2021 and $13 per hour thereafter through the end of her employment in December 2022; at all relevant times, she worked substantially more than 40 hours per week. (Santos Decl., ¶¶ 9-10; *accord* SAC, ¶¶ 32-34.)  Accordingly, as reflected below, the minimum wage damages accruing to Santos for her regular hours of work total are **$5,760.00**, for which the Patels and Bagel Creation (but not Bagel Express) are liable.

**Santos Table 1 - Minimum Wage Damages:**

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| Time Period | Total Weeks | Pre-OT Hrs/Wk | Pay/Hr | NYLL MW | Rate Shortfall *(=E-D)* | Weekly Shortfall *(F*C)* | Total MW Shortfall *(B*G)* |
| Apr. '21 | 4 | 40 | $12.00 | $14.00 | $ 2.00 | $ 80.00 | **$   320.00** |
| May '21 – Dec. '21 | 30 | 40 | $12.00 | $14.00 | $ 2.00 | $ 80.00 | **$ 2,400.00** |
| Jan. '22 – Mar. '22 | 21 | 40 | $13.00 | $15.00 | $ 2.00 | $ 80.00 | **$ 1,680.00** |
| Apr. '22 – Dec. '22 | 17 | 40 | $13.00 | $15.00 | $ 2.00 | $ 80.00 | **$ 1,360.00** |
| | | | | | | | **$ 5,760.00** |

### 2) Overtime Claim

As averred in her declaration, and consistent with the pleadings in this action, Santos worked 16 hours of overtime per week in her first month at Bagel Creation, 37 hours per week from May 2021 through March 2022, and 43 hours per week from April 2022 through the end of her employment, but was never paid overtime (Santos Decl., ¶¶ 9-10; *accord* SAC, ¶¶ 32-34, 38.) Accordingly, as reflected below, Santos is due **$24,892.00** in overtime damages, for which the Patels and Bagel Creation (but not Bagel Express) are liable.

**Santos Table 2 - Overtime Damages:**

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| Time Period | Total Weeks | OT Hrs/Wk | Actual Pay/Hr | NYLL MW | OT Rate *(higher of D*1.5 or E*1.5)* | OT Shortfall *(=F-D)* | Weekly Shortfall *(=G*C)* | Total MW Shortfall *(=C*H)* |

21

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Apr. '21 | 4 | 16 | $12.00 | $14.00 | $21.00 | $ 9.00 | $144.00 | $    576.00 |
| May '21 – Dec. '21 | 30 | 37 | $12.00 | $14.00 | $21.00 | $ 9.00 | $333.00 | $ 9,990.00 |
| Jan. '22 – Mar. '22 | 21 | 37 | $13.00 | $15.00 | $22.50 | $ 9.50 | $351.50 | $ 7,381.50 |
| Apr. '22 – Dec. '22 | 17 | 43 | $13.00 | $15.00 | $22.50 | $ 9.50 | $408.50 | $ 6,944.50 |

$24,892.00

### 3) Spread-of-Hours Claim

Under New York law, restaurant employees are entitled to an additional hour of pay at the prevailing minimum wage for every day they work more than 10 hours.  N.Y.C.R.R., tit. 12, § 146-1.6.  As set forth in her declaration, commencing in May 2021, Santos worked "*no less than three days per week*" during which her daily shift exceeded 10 hours, and that figure increased, in April 2022, to "*no less than* five days per week".  (Santos Decl., ¶ 9; *accord* SAC, ¶ 33 (setting forth Santos's weekly hours and average daily shifts.)  Accordingly, as reflected in the table below, Santos is therefore entitled to **$3,480.00** in spread-of-hour damages.

**Santos Table 3 – Spread-of-Hour ("SoH") Damages:**

| A | B | C | D | E | F |
|---|---|---|---|---|---|
| **Time Period** | **Total Weeks** | **Shifts/Week > 10 Hours** | **Total Shifts > 10 Hours** *(=B*F)* | **SoH Premium** *(=NYLL MW)* | **SoH Damages** *(=D*E)* |
| Apr. '21 | 4 | 0 | 0 | $14.00 | $    - |
| May '21 – Dec. '21 | 30 | 3 | 90 | $14.00 | **$ 1,260.00** |
| Jan. '22 – Mar. '22 | 21 | 3 | 63 | $15.00 | **$    945.00** |
| Apr. '22 – Dec. '22 | 17 | 5 | 85 | $15.00 | **$ 1,944.50** |

**$ 3,480.00**

### 4) Liquidated Damages

Because, as reflected in the preceding sections, Santos's total unpaid wages consist of $5,760 in withheld minimum wages, $24,892 in unpaid overtime premiums, and $3,480 in unpaid

spread-of-hours premiums, beyond compensation for these unpaid wages, she is also entitled to this combined amount, equal to **$34,132**, in liquidated damages.

### 5) WTPA Claims

Santos, like Morales, avers that, at all times during her employment and thereafter, she was denied wage notices and wage statements. (Santos Decl., ¶¶ 12-13.) Moreover, as above, Santos's declaration also attests to the direct injury these violations caused. (*Id.* at ¶¶ 14-16.) Accordingly, and because the wage notice and statement failures persisted for well over 100 days, Santos is entitled to **$10,000** in WTPA damages from the Patels and Bagel Creation.

### 6) NYSHRL Claims

As set forth in Point II.C above, Santos has established that N. Patel and Bagel Creation are liable under the NYSHRL for N. Patel's sexual harassment and creation of a hostile work environment. Santos seeks damages for emotional distress arising from such conduct. The Second Circuit recognizes three categories of damages for emotional distress: (1) garden variety; (2) significant; and (3) egregious. *Sooroojballie v. Port Authority of New York & New Jersey*, 816 F. App'x 536, 546 (2d Cir. 2020). The first category, involves evidence of mental suffering that "is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms." *Ravina v. Columbia Univ.*, 2019 WL 1450449, at *11 (S.D.N.Y. Mar. 31, 2019) (internal quotations omitted). Significant claims differ from the garden-variety claims "in that they are based on more substantial harm or more offensive conduct." *Rainone v. Potter*, 388 F. Supp.2d 120, 122 (E.D.N.Y. 2005). While Santos's NYSHRL claim might be considered significant given the conduct at issue, for purposes of the instant Motion, she seeks only garden variety damages in the amount of **$15,000**. These damages are well within the range awarded by courts in this Circuit. *See Setty*, 2018 WL 8415414, at *17 (citing E.D.N.Y. opinions for the proposition that "damages for garden-variety emotional distress claims ranging from $5,000 to

$ 35,000" but noting that such claims can also merit awards of up to $125,000); *see also Villalta v. JS Barkats, P.L.L.C.*, 2021 WL 2458699, at *14 (S.D.N.Y. Apr. 16, 2021) (citing relatively recent opinions addressing garden-variety claims as "generally meriting $30,000 to $125,000 awards"), *report and recommendation adopted*, 2021 WL 2458023 (S.D.N.Y. June 16, 2021).

### 7)  *Pre-Judgment Interest*

Like Morales, Santos is entitled to pre-judgment interest on her wage-hour claims. Additionally, pre-judgment interest accrues on her NYSHRL damages. *See Santiago v. Crown Heights Ctr. for Nursing & Rehab.*, 2017 WL 9482107, at *24 (E.D.N.Y. Feb. 24, 2017), *report and recommendation adopted as modified*, 2017 WL 4410807 (E.D.N.Y. Sep. 30, 2017) ("[C]ourts in this circuit have interpreted the NYSHRL's mandate to make victims "whole" to allow for an award of pre-judgment interest."). Here, the approximate midpoint of Santos's period of employment, from which interest should accrue, is **February 14, 2022**.

### C.  <u>Mondragon's Claims and Damages</u>

As set forth below, and corroborated by her declaration and the pleadings, Mondragon is entitled to **$8,379** in compensatory damages for her wage-hour claims (*i.e.*, unpaid minimum wages, overtime premiums, and withheld gratuities), **$15,000** in emotional distress damages arising from her NYSHRL claim, and 9% pre-judgment interest on those combined amounts as accrued from **June 17, 2022** to the entry of judgment against Defendants. Santos is also entitled to **$8,379** in liquidated wage-hour damages and **$10,000** in statutory WTPA damages.

### 1)  *Minimum Wage Claim*

Mondragon worked 40+ hours at Bagel Creation throughout her employment, earning $12 per hour throughout that period. (Mondragon Decl., ¶¶ 9-10; *accord* SAC, ¶¶ 40-41.) Accordingly, as reflected below, the minimum wage damages accruing to Mondragon for her regular hours are **$4,560.00**, for which the Patels and Bagel Creation (but not Bagel Express) are liable.

**Mondragon Table 1 – Minimum Wage Damages:**

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| Time Period | Total Weeks | Pre-OT Hrs/Wk | Pay/Hr | NYLL MW | Rate Shortfall *(=E-D)* | Weekly Shortfall *(F*C)* | Total MW Shortfall *(B*G)* |
| Feb. '22 – Oct. '22 | 38 | 40 | $12.00 | $15.00 | $ 3.00 | $120.00 | **$4,560.00** |

### 2)  Overtime Claim

As averred in her declaration, and consistent with the pleadings in this action, Mondragon worked 5 hours of overtime per week throughout her employment, but was never paid overtime (Mondragon Decl., ¶¶ 9-10; *accord* SAC, ¶¶ 39-42.)  Accordingly, as reflected below, Mondragon is due **$1,995** in overtime damages, for which the Patels and Bagel Creation (but not Bagel Express) are liable.

**Mondragon Table 2 - Overtime Damages:**

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| Time Period | Total Weeks | OT Hrs/Wk | Actual Pay/Hr | NYLL MW | OT Rate *(higher of D*1.5 or E*1.5)* | OT Shortfall *(=F-D)* | Weekly Shortfall *(=G*C)* | Total MW Shortfall *(=C*H)* |
| Feb. '22 – Oct. '22 | 38 | 5 | $12.00 | $15.00 | $22.50 | $10.50 | $52.50 | **$1,995.00** |

### 3)  Tip Withholding Claim

Section 196-d of the NYLL provides that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d; *Romero v. Anjdev Enterprises, Inc.*, 2017 WL 548216, at *11 (S.D.N.Y. 2017). The NYLL permits employees to recover gratuities that were unlawfully retained. *Id*. Here, Mondragon asserts that she worked six days a week and was paid no more than $2 in gratuities a day despite the fact that the daily gratuities pooled among the four to five cashiers employed at Bagel Creation, amounted to $50 or more.  In other words, even

assuming a pool of five cashiers on any given day, Mondragon should have received $10 a day, and $60 per week, i.e., $48 more than the maximum she actually received each week. Applying that sum across 38 weeks, yields a total damages figure of **$1,824** in withheld gratuities.

### 4)  *Liquidated Damages*

Because, as reflected in the preceding sections, Santos's total unpaid wages consist of $4,560 in withheld minimum wages, $1,995 in unpaid overtime premiums, and $1,824 in withheld gratuities, beyond compensation for these unpaid wages, she is also entitled to this combined amount, equal to **$8,379**, in liquidated damages.

### 5)  *WTPA Violations*

Mondragon, like Morales and Santos, avers that, at all times during her employment and thereafter, she was denied wage notices and wage statements (Mondragon Decl., ¶¶ 16-17) and that she was directly injured as a result. (*Id.* at ¶¶ 18-20.) Accordingly, and because the wage notice and statement failures persisted for well over 100 days, Mondragon is entitled to **$10,000** in WTPA damages from the Patels and Bagel Creation.

### 6)  *NYSHRL Claims*

As set forth in Point II.C above Mondragon asserts conduct comparable to Santos with respect to her NYSHRL and seeks the same amount of damages for emotional distress: **$15,000.**

### 7)  *Pre-Judgment Interest*

Mondragon, like Santos, is entitled to pre-judgment interest on her wage-hour and NYSRL compensatory damages. Here, the approximate midpoint of Mondragon's period of employment, from which interest should accrue, is **June 17, 2022**.

**POINT IV**
**PLAINTIFFS' DEMAND FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE**

Given the purpose of the FLSA, NYLL, and NYSHRL as remedial statutes designed to

protect workers such as Plaintiffs, courts are directed to ensure that attorneys who serve in the "private attorney general role must be adequately compensated for their efforts." *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010). All of these statutes include a dictate mandating an award of attorneys' fees and costs to be paid by the defendant. *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663(1); N.Y. Exec. Law § 297(10). As discussed below, in light of the facts set forth therein and the standard for awarding attorneys' fees and costs, Plaintiffs' demand of **$40,524.07**, consisting of $39,017.50 in fees and $1,506.57 in costs, should be granted.

### A. Plaintiffs' Attorneys' Fees Are Reasonable

Courts consider both the reasonableness of the hourly rate(s) and the amount of time spent on the matter to arrive at a presumptively reasonable fee given the particulars of the case. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany*, 522 F.3d 182, 190, n.5 (2d Cir. 2008). The attorney rates and time set forth in the Dror Declaration are both reasonable.

First, and especially when adjusted for inflation, the requested rates broadly align with the rate ranges cited with approval by the Eastern District of New York in 2021. *See Caltenco v. G.H. Food Inc.*, 2021 WL 4481205, at *6 (E.D.N.Y. Sep. 30, 2021) (noting that courts had previously awarded rates of $300-$450 for partners and $200-$325 for senior associates, and $70-$100 for legal support staff); *Cohetero v. Stone & Tile, Inc.*, 2018 WL 565717, at *4 (E.D.N.Y. Jan. 25, 2018) (summarizing cases with partners receiving as much as $450 per hour, legal assistants typically up to $100 per hour). In particular:

- Plaintiffs request an hourly rate of $375 per hour for the work performed by the lead attorneys in this action, Senior Counsel and now Partner, Eyal Dror. Mr. Dror is a 2007 graduate of Columbia Law School and is a highly experienced attorneys, with over 15 years of litigation experience. Moreover, while the latest billing rate for Mr. Dror – *i.e.*, the rate charged to and paid by Trief & Olk clients who engage the firm on an hourly basis – is $500 per hour, Plaintiffs' requested rate of $375 per hour reduces this rate by one-quarter. (Dror Decl. at ¶¶ 9-12, 19.)

- Plaintiffs request an hourly rate of $450 per hour for the work performed by former Partner Shelly Friedland, a 1997 graduate of Harvard Law School with extensive experience in complex litigation, as well as wage-hour matters. Ms. Friedland handled initial intake of this matter and, after Mr. Dror took over the matter in early 2023, she addressed a limited number of discrete matters. While that latest billing rate for Ms. Friedland was $650 per hour, as with Mr. Dror, Plaintiffs' demand reduces this rate by over one-quarter to $450 an hour. (*Id.* at ¶¶ 13-14, 19.)

- Plaintiffs request an hourly rate of $100 per hour for all legal assistants who worked on this matter (whose experience ranges from one year to over 25 years). This is $75 per hour less than the rate billed to hourly clients for their time. (*Id.* at ¶ 15-18)

In addition to the rates undergirding Plaintiffs' fee demand, the hours for which Plaintiffs seek compensation are reasonable. Plaintiffs seek payment for the counsel's time through July 31, 2024, a span of nearly two years, which stretched through initial discovery, mediation, and settlement discussions. (*See* Dror Decl., ¶ 18.) These hours exclude various categories of time spent on this matter, including all time spent preparing this motion and obtaining the certificate of default and other documents necessary to submit it, time Mr. Dror and Ms. Friedland spent on Mr. Dror's initial transition into the case, time Ms. Friedland spent on calls and conferences also attended by Mr. Dror, and time another junior attorney spent reviewing the matter in anticipation of a transition that did not take place (*See* Dror Decl., ¶ 18.). In all, Trief & Olk has excluded 4.1 hours of time from Plaintiffs' fee demand. (*Id.* at ¶ 21.) As depicted in the time entry report attached to the accompanying Dror Declaration (at Ex. A), the remaining time expended by Trief & Olk was reasonable and necessary toward the prosecution of this case.

In sum, given counsel's work to date, the overall fee of $39,017.50 requested is fair and reasonable (and, indeed, less than the standard one-third contingency fee that Plaintiff would otherwise incur). Consistent with the status and purpose of the FLSA and NYLL to ensure

effective enforcement of these statutes,[11] Plaintiffs submit this amount should be awarded in full.

### B. **Plaintiffs' Costs Are Reasonable**

As with the above-described fees, Plaintiffs are also legally entitled to reimbursement for reasonable costs for identifiable, out-of-pocket disbursements ordinarily charged to clients in litigation, such as filing fees, service of process, transcripts, and postage.  Here, Plaintiff requests payment of $1,506.57 for expenses (Dror Decl., ¶ 28) that were all essential to prosecuting the instant action, *i.e.*: (1) fees for filing and service of process; (2) PACER fees; (3) postage charges, (4) mediation fees; and (5) fees for services to verify that Patels were not engaged in military service.  Such expenses are routinely compensated for attorneys in FLSA (and NYLL) cases.  *See*, *e.g.*, *Caltenco*, 2021 WL 4481205,  at *11 (awarding costs for, among other things, filing fees, PACER charges, and postage).  Accordingly, Plaintiff's demand for costs should be granted.

## CONCLUSION

For the foregoing reasons and based all prior papers and proceedings herein, Plaintiffs respectfully request that their motion for a default judgment against Defendants be granted in full and that the Court enter the Proposed Default Judgement attached as Exhibit A to the Dror Declaration.

Dated:   October 16, 2024
    New York, New York

By:   */s/ Eyal Dror*
      Eyal Dror
      **TRIEF & OLK**

---

[11]   *See Toure v. Thunder Lube Inc.*, 2019 WL 4805197, at *5 (E.D.N.Y. Sep. 30, 2019) (noting NYLL and FLSA are "beneficent statutes intended to protect workers," requiring "defendant employers to pay the attorneys' fees of prevailing plaintiff workers to encourage 'private attorneys general' to enforce the statute"); *see also Johnson v. Parts Auth., LLC*, 2021 WL 4221775, at *3 (E.D.N.Y. Sep. 16, 2021) (internal quotations omitted) (discussing importance of encouraging attorneys to vindicate congressional policy, given that "Plaintiff's counsel's role as private attorneys general is key to the effective enforcement of these statute[]").

800 Third Avenue, 29th Floor
New York, New York 10022
Tel: (212) 486-6060
Email: edror@triefandolk.com

*Attorneys for Plaintiffs*